Jason M. Tangeman, WSB # 6-3082
Nicholas & Tangeman, LLC
170 North Fifth Street,
P.O. Box 928, Laramie, WY 82073-0928
Phone: (307) 742-7140
Fax: (307) 742-7160
jtangeman@wyolegal.com
Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 JUN 10 AM 11: 32

MARGARET BOTKINS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED HERITAGE CO. LTD., <br><br> **Plaintiff,** <br> v. <br><br> **GARY SHIRNYAN AKA IGOR SEYRANOV, MORA WEALTH MANAGEMENT** <br><br> **Defendants.** | Case No. 20-CV-102-S <br><br> **COMPLAINT** |

**COMES NOW**, Plaintiff United Heritage Co. LTD. (hereinafter "United Heritage"), by and through their undersigned attorneys, and for its Complaint against Defendant Gary Shirnyan aka Igor Seyranov and Mora Wealth Management, alleges and avers as follows:

### PARTIES

1. Plaintiff United Heritage is a company formed and registered in Thailand and located at 88/1 Moo 7, Chalong Sub-District, Muangphuket District, Phuket Province 83130.

2. On information and belief, Defendant Gary Shirnyan aka Igor Seyranov is a citizen of California. Process may be served upon said Defendant at 5632 Van Nuys Blvd # 622, Van Nuys, CA 91403.

3. On information and belief, Defendant Mora Wealth Management is a Delaware corporation that does business in Florida at 1450 Brickell Ave, Suite 2900, Miami, FL 33131. Process may be served upon said Defendant's registered agent, which is Corporate Creations Network, Inc., located at 801 U.S. Highway 1, North Palm Beach, FL 33408.

4. Plaintiff and Defendant Gary Shirnyan aka Igor Seyranov are parties to a Stock Loan Agreement dated November 20, 2019, a true and correct copy of which is attached hereto as Exhibit "A," and incorporated herein by this reference.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are residents of different states, and the amount in controversy exceeds $75,000. This Court has jurisdiction over Defendants because Defendant Gary Shirnyan aka Igor Seyranov consented to the jurisdiction of Wyoming in a choice of venue provision contained in the Stock Loan Agreement § 7.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because the parties selected Wyoming as the exclusive venue for resolving any of their disputes and further selected the laws of the State of Wyoming as controlling the interpretation of the Stock Loan Agreement. If there is no district in which an action may otherwise be brought, the civil action may be brought in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

## FACTS

7. In November 2019, United Heritage and Gary Shirnyan entered into a contract called a "Stock Loan Agreement" ("SLA") which set forth the terms and conditions of transactions between them involving the borrowing and lending of securities.

8. In the recitals to the SLA, Gary Shirnyan represented himself to be a professional investor.

9. Under a stock loan agreement, the owner of a stock lends the stock to the investor in exchange for a future demand to get the stock back minus a stock loan fee.

10. Egor Chernov executed the SLA on behalf of the United Heritage.

11. Prior to entering into the SLA with Defendant, Gary Shirnyan represented to United Heritage that he is "a partner of Mora Wealth Management" and Mora Wealth Management is listed as the "Beneficiary Broker" in the SLA.

12. In paragraph 1.1, the SLA provided as follows:

> **Lender grants Borrower with a loan calculated as 20% of the cash proceeds earned on liquidation of any or all of the shares issued in the name of the Borrower under the terms and conditions of this agreement, that is, in the aggregate a total of 2,200,000 ... free trading shares of Rafarma Pharmaceuticals, Inc. (that is, RAFA shares free of any encumbrances whatsoever) hereinafter referred to as the "Loan Amount".**

13. With respect to loan repayment, paragraph 4.1 of the SLA further stated that:

> **The Loan shall be repaid in cash upon the written instruction of the Lender and/or with cash and the shares of the Lender that are not liquidated by the Borrower on or before the date of maturity which will be settled between the parties upon further discussion. Subject to the Terms and Conditions of this loan regarding 'Taxation' as provided in 4.2 below, the loan will be considered by both parties to be repaid, when 80% of the Net Cash Proceeds and any and all unsold shares of RAFA in the name of the Borrower as priced on the date of maturity are transferred to the Lender and /or his assigns.**

14. As provided in the SLA, the underlying shares for the loan, namely 2,200,000 free and unencumbered trading shares of Rafarma Pharmaceuticals, Inc., were issued by United Heritage to Defendant Gary Shirnyan's brokerage account at Mora Wealth Management.

15. In an interim stock sales report, Defendant Gary Shirnyan submitted to Plaintiff the following financials:

    (a) Total proceeds: $682,222.08

    (b) Mora Wealth fee (2.43%): $16,563.26

    (c) Net proceeds: $665,658

16. In view of the 20% commission to be retained by Defendant in the amount of $133,131.76, the net amount due to United Heritage per agreement is $532,526.50.

17. To date, United Heritage received wires in the amount of $259,492.99 and $160,090.28, for a total of $419,583.27.

18. The remaining cash amount owed under the SLA presently stands at $112,943.23. In addition, Defendant owes Plaintiff the remaining shares of stock that were not yet liquidated, which is 270,400 shares of stock.

19. Plaintiff has made a demand for the return of the remaining funds and shares of stock, yet Defendant refused to perform its obligations under the SLA.

## FIRST CAUSE OF ACTION
## AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
## BREACH OF EXPRESS CONTRACT

20. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

21. The SLA is a contract between Plaintiff and Defendant, and each has rights and obligations thereunder.

22. The relevant terms of the SLA are clear and unambiguous.

23. Plaintiff performed all of its obligations set forth in the SLA.

24. Defendant failed and refused to pay the unpaid balance, as set forth in the terms of the SLA, thereby failing to perform his obligations under the SLA.

25. As a result of Defendant's breach of the SLA, Plaintiff has been damaged in the amount of $112,943.23 plus the value of the unreturned 270,400 shares of stock of Rafarma Pharmaceuticals, Inc., as well as attorneys' fees, and costs that continue to accrue.

## SECOND CAUSE OF ACTION
### AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
### FRAUD

26. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

27. Defendant represented to Plaintiff that he is a professional investor and that he would repay the loan as promised.

28. On information and belief, Defendant's representations were false, and Defendant knew they were false. Specifically, Defendant did not intend to honor the terms of the loan agreement since that agreement's inception.

29. Defendant made these misrepresentations intentionally and intended that Plaintiff rely on the misrepresentations.

30. Plaintiff reasonably and justifiably relied to its detriment on Defendant's misrepresentations

31. Plaintiff's reliance on Defendant's representations was a substantial factor in causing harm to Plaintiff.

32. As a proximate result of Defendant's misrepresentations, Plaintiff was damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

33. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

34. The law implies a covenant of good faith and fair dealing in every contract.

35. Defendant violated this covenant of good faith and fair dealing in the SLA by, *inter alia*, refusing to repay the loan.

36. Plaintiff performed all, or substantially all, of its duties required under the SLA, including the issuance of the stock for the benefit of Defendant.

37. Defendant did not provide the promised benefits under the SLA.

38. Plaintiff has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
### UNJUST ENRICHMENT

39. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

40. Plaintiff has conferred a benefit upon Defendant, and Defendant has received 2,200,000 free trading shares of Rafarma Pharmaceuticals, Inc. and retained proceeds from the sale of such stock, all of which belong to Plaintiff.

41. Defendant appreciated or had knowledge of the benefit.

42. Under principles of equity and good conscience, Defendant should not be permitted to retain the money and stock belonging to Plaintiff that he unjustly received.

43. As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered damage and is entitled to monetary damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
### AND MORA WEALTH MANAGEMENT
### CIVIL CONSPIRACY

44. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

45. Defendant Mora Wealth Management acted together with Defendant Gary Shirnyan aka Igor Seyranov to accomplish an unlawful object or a lawful object by unlawful means, including fraud and breach of contract.

46. On information and belief, Defendants had a meeting of the minds whereby they decided to take steps to accomplish their unlawful acts and omissions.

47. Defendants committed one or more unlawful overt acts in furtherance of this conspiracy, including, but not limited to, fraud and breach of contract.

48. The purpose of the conspiracy was to injure Plaintiff for the financial gain of Defendants.

49. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff is entitled to actual, compensatory, consequential, and punitive damages in an amount to be determined by the trier of fact.

## SIXTH CAUSE OF ACTION
## AS TO GARY SHIRNYAN AKA IGOR SEYRANOV
## AND MORA WEALTH MANAGEMENT
## AIDING AND ABETTING

50. Plaintiff restates and realleges every preceding paragraph of this Complaint as though restated here.

51. Defendants are liable to Plaintiff for their wrongful acts described above.

52. Defendants had knowledge of each other's wrongful acts but, nevertheless, knowingly advised, encouraged, aided, abetted, and assisted each other and their wrongful acts.

53. As a result of their assistance and encouragement of each other's wrongful acts, Defendants committed the wrongful acts detailed herein.

54. As the direct and proximate result of the Defendants' wrongful conduct, Plaintiff is entitled to actual, compensatory, consequential, and punitive damages in an amount to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order:

(a) Awarding Plaintiff damages in the amount of $112,943.23 plus the value of the unliquidated 270,400 shares of stock of Rafarma Pharmaceuticals, Inc.

(b) Awarding Plaintiff actual, compensatory, consequential, and punitive damages in an amount to be determined by the trier of fact.

(c) Awarding Plaintiff all attorneys' fees and costs incurred; and

(d) Awarding Plaintiff such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff, United Heritage Co. LTD., hereby demands a jury trial, composed of 6 persons, on all issues so triable in the above captioned action.

**DATED**: June 8, 2020.

Respectfully submitted,

_/s/ Jason M. Tangeman_

Jason M. Tangeman, WSB # 6-3082
Nicholas & Tangeman, LLC
170 North Fifth Street
P.O. Box 928
Laramie, WY 82073-0928
Phone: (307) 742-7140
Fax: (307) 742-7160
jtangeman@wyolegal.com

## STOCK LOAN AGREEMENT

EXHIBIT A

Concluded on     20 November, 2019

**BETWEEN:**

**GARY SHIRNYAN,** a private individual residing at 5632 VAN NUYS BLVD #622, VAN NUYS, CA 91403, USA, hereinafter referred to as the **"Borrower"**

AND

**UNITED HERITAGE CO. LTD.,** incorporated under the laws of the Kingdom of Thailand, registered at 88/1 Moo 7, Chalong Sub-District, Muangphuket District, Phuket Province 83130, Thailand, represented here by Director, Egor Chernov, hereinunder referred to as the **'Lender"**

**Whereas:**

i) The Borrower is a professional investor.

ii) The Borrower intends to use the loan for day to day working capital and/or investment purposes;

iii) The Lender has agreed to issue in the name of the borrower 2,200,000 (two million two hundred thousand) free trading shares of Rafarma Pharmaceuticals, Inc. that are traded on the OTC Markets, Pink Current platform OTC: TICKER Symbol: RAFA.

iv) The Lender obtained the shares through Company funds and/or under a share for debt arrangement with the Issuer (or other contractual arrangement with the issuer or a third party):

v) Notwithstanding the delivery of the shares to the Borrower to provide for the Stock Loan arrangement between the parties, it is understood that the Lender will receive repayment of the Loan in cash and/or in kind, that is the shares of Rafarma Pharmaceuticals, Inc. that are not sold in the Borrower's account on the date the loan matures, in accordance with the terms and conditions as provided herein;

vi) In calculating the underlying value for the shares at the date of execution of this loan agreement, a cost price equal to the value of the said shares on the date the shares are booked into the Borrower's account will be applied;

Now therefore the parties agree as follows:

**Terms and Conditions: The Loan Transaction**

**1. Amount of The Loan**

1. Lender grants Borrower with a loan calculated as 20% of the cash proceeds earned on liquidation of any or all of the shares issued in the name of the Borrower under the terms and conditions of this agreement, that is, in the aggregate a total of 2,200,000 shares (five hundred thousand) free trading shares of Rafarma Pharmaceuticals, Inc. (that is, RAFA shares free of any encumbrances whatsoever) hereinafter referred to as the **"Loan Amount "**.

1.2 The underlying shares for the loan shall be distributed by the Lender to the Borrower at the brokerage account indicated by the Borrower as follows:

Beneficiary Broker: MORA WEALTH MANAGEMENT

## 2. Purpose of the Loan

The amount of the Loan, which will be an amount no greater than 20% of the aggregate of net proceeds raised on the liquidation of the shares, over a period to be agreed under separate cover between the parties, will be used by the Borrower for routine working capital and for investment purposes as the borrower sees fit.

## 3. Interest Rate

In respect of this loan, both parties have agreed that under the terms and conditions of this Loan Agreement, the loan will be non-interest bearing throughout the repayment period.

## 4. Repayment of the Loan

4.1  The Loan shall be repaid in cash upon the written instruction of the Lender and/or with cash and the shares of the Lender that are not liquidated by the Borrower on or before the date of maturity which will be settled between the parties upon further discussion. Subject to the Terms and Conditions of this loan regarding 'Taxation' as provided in 4.2 below, the loan will be considered by both parties to be repaid, when 80% of the Net Cash Proceeds and any and all unsold shares of RAFA in the name of the Borrower as priced on the date of maturity are transferred to the Lender and /or his assigns.

4.2. The parties to this Stock Loan Agreement agree and understand that certain federal tax policies for capital gains may be applied to the proceeds on liquidation of the RAFA shares that are held in the Borrower's account. In this regard, it is agreed and understood that the Borrower's accountants will use best practice in applying the federal tax rules and policies to the Borrower's account in order to make a determination in this regard, Should Federal taxation apply for capital gains, the Borrower will forthwith provide full and timely information to the Lender in order to address this issue in a fair and reasonable manner to ensure that the mutual interests of both parties are protected.

## 5. Miscellaneous Provisions

5.1  Notices

Any notices connected with the Agreement shall be made in writing and signed by or on behalf of the Party serving the notice. Notices may be sent by registered mail, courier or by E-mail and/or FAX transmission subsequently confirmed with registered mail to the addresses indicated in the preamble of this Agreement as follows:

5.1.1.  For GARY SHIRNYAN: 5632 VAN NUYS BLVD #622, VAN NUYS, CA 91403, USA

5.1.2.  For United Heritage Co. Ltd.: 88/1 Moo 7, Chalong Sub-District, Muangphuket District, Phuket Province 83130 , Thailand, info@uhcl.group

Any change in addresses shall be effective upon receipt by the Party of a written notice from the Party changing the address.

6. **Governing Law**

This Agreement shall be governed by and construed in accordance with the law of the State of Wyoming, USA.

7. **Disputes**

The Parties mutually represent that they shall endeavor to settle any and all disputes arising from or connected with this Agreement by way of negotiations and consultation. All disputes arising from or in connection with this Agreement, including disputes on its conclusion, binding effect, amendment and termination, shall be judged exclusively by an appropriate Court in the State of Wyoming.

8. **Costs**

The parties shall bear all costs related to the execution of agreement each for his own account.

9. **Amendments**

Any amendments or modifications of this Agreement shall be made in writing; otherwise they shall be null and void. The Parties agree that if any part of the Agreement is deemed invalid or otherwise legally defective, the remaining part of the Agreement shall remain in force. In the case provisions are deemed invalid or unenforceable, the Parties shall undertake negotiations in good faith in order to replace such provisions, to the greatest possible extent, with alternative provisions which shall be valid and enforceable and shall reflect the original intentions of the Parties.

10. **Assignment**

The rights and obligations of the Parties under this Agreement may not be assigned to any third party without prior written consent of the other Party.

**SIGNED:**

_____     1 1 / 2 1 / 2 0 1 9
Borrower                             Date
                                     11/21/2019


Lender                               Date


Q. Chernov